**AMERICAN INSTITUTE OF INTERIOR DESIGNERS, a corporation, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 38532.**

United States District Court
N. D. California, S. D.

Aug. 6, 1962.

202

David Livingston, San Francisco, Cal., for plaintiff.

Cecil F. Poole, U. S. Atty., and Richard L. Carico, Asst. U. S. Atty., San Francisco, Cal., for defendant.

WOLLENBERG, District Judge.

The above entitled action was commenced to recover income taxes in the amount of $20,589.29 paid for the calendar years 1955 and 1956 by the American Institute of Interior Designers (then known as the American Institute of Decorators, Northern California Chapter).

Jurisdiction is conferred upon this Court by Section 1346(a) (1) of Title 28 United States Code (28 U.S.C. 1958 ed., § 1346).

The question presented is whether or not plaintiff was a business league, exempt from income taxes imposed upon the corporation during the calendar years 1955 and 1956.

The pertinent part of the Internal Revenue Code of 1954 reads as follows:

"§ 501. Exemption from tax on corporations, certain trusts, etc.

"(a) Exemption from taxation.—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502, 503, or 504.

\* \* \* \* \* \*

"(c) List of exempt organizations.—The following organizations are referred to in subsection (a):

\* \* \* \* \* \*

"(6) Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual."

On January 23, 1956, plaintiff filed with the District Director of Internal Revenue, an application for exemption from income taxes as a business league, exempted under 501(c) (6) of the Internal Revenue Code of 1954, 26 U.S.C. § 501(c) (6). The requested exemption was denied by a ruling letter dated July 2, 1956 from the office of the Commissioner of Internal Revenue, principally because of plaintiff's activities in connection with an exhibition sponsored by the plaintiff in 1956.

Subsequently, plaintiff filed a corporation income tax return for the calendar year 1955 and paid the $15,011.11 shown thereon, plus accrued interest. For the calendar year 1956, plaintiff filed a timely return and paid the tax in the amount of $5,578.18 reflected thereon. Timely claims for refund were thereafter filed, wherein the plaintiff claimed refund of

all amounts paid for 1955 and 1956 on the grounds that it was an exempt business league, and this action was commenced when more than six months had elapsed without any action being taken by the Commissioner on either claim.

Of the total amount demanded by plaintiff as a refund for the calendar year 1955, interest of $112.58 and tax of $1,545.91, together with allowable interest thereon, has already been refunded as a result of computation and a net operating loss carried back from 1957.

Plaintiff is a non-stock membership corporation organized and existing under the general non-profit corporation laws of the state of California. It was incorporated on October 6, 1955 and was an outgrowth of an unincorporated association of interior decorators which had been in existence for approximately twenty years. Plaintiff was incorporated under the name "American Institute of Decorators, Northern California Chapter", but was not a chapter of the national organization known as the American Institute of Decorators. A local chapter of the national organization existed contemporaneously with the plaintiff. Prior to the commencement of this action, plaintiff changed its name to "American Institute of Interior Designers".

Plaintiff's articles of incorporation provide in pertinent part that "the specific business in which the corporation proposes primarily to engage is the promotion of educational programs, plans to advance the art of interior design and decoration, and to uphold and practice a code of ethics of mutual benefit and professional trade relations". The general purposes and powers stated in the articles permit plaintiff to become a member of any partnership; to deal in real and personal property, securities, trademarks, copyrights; to loan money; to guarantee the performance or obligations of any organization or individual to act as retailer and wholesale merchant for merchandise of every character; and, in general "to carry on and conduct any other business * * * and to have

and exercise all powers conferred by the laws of the state of California upon corporations * * *." Plaintiff's articles further provide that it does not contemplate the distribution of gains, profits, or dividends to members; that no member shall have any vested or beneficial interest in its assets; and that, upon final dissolution, its assets are to be distributed to the American Institute of Decorators if it is exempt from taxation, to any other exempt non-profit organization having the same general purposes of plaintiff, or to any other exempt non-profit organization selected by the directors then in office. Plaintiff's articles and by-laws do not define the manner in which its specific purpose is to be carried out or limit the general purposes and powers to activities which further its specific purpose.

Plaintiff's qualifications for membership are as follows: Membership in the American Institute of Decorators (i. e., the national organization), active participation in the interior decoration trade in Northern California, and either, (a) four years of college education and three years of experience, or (b) two years of college education, three years of technical training in design and three years of experience, or, (c) ten years of experience.

No member of plaintiff is or ever has been a regular salaried employee. The officers and directors of plaintiff have at all times herein mentioned served without compensation. Plaintiff has not and does not maintain an office of any kind.

During the period October 27, 1955 to September 20, 1956, twelve out of a total of fifteen meetings of the Board of Directors of plaintiff were held at the place of business of a member of plaintiff for the use of which no compensation was paid by plaintiff.

Under the auspices of plaintiff, two exhibitions or shows have been produced during the period beginning with the date of its incorporation up to the time of the trial of this action on March 1, 1962, one on April 21 to 25, 1956 and one in 1959. The 1956 exhibition was open

to the public and was held at the time of and in conjunction with, the National Conference of American Institute of Decorators. Pre-show publicity in the form of newspaper advertisements, posters, etc., appeared locally and in other cities where there were chapters of the American Institute of Decorators. Plaintiff also contracted with the San Francisco Association for the Blind to permit a charity preview to obtain free publicity for the exhibition.

Plaintiff rented the auditorium in which the exhibit was held and in turn rented space therein to various exhibitors. Rental received from member exhibitors totaled $10,920.00 and rentals received from non-member exhibitors totaled $91,402.50. Approximately $40,000.00 was realized from ticket sales to the public.

Nine chapters of the American Institute of Decorators had exhibits at plaintiff's 1956 exhibition, but most of the exhibitors were manufacturers or suppliers of furniture, rugs, fabrics, etc., and other individuals and firms with whom interior decorators did business. The participation of these individuals and firms was solicited with the representation that they would have an audience of decorators from all parts of the country (in addition to the general public) before whom to display their products. The great majority of exhibits were room settings by plaintiff's individual members using the products manufactured or distributed by the particular exhibitor. Each exhibit was identified by the exhibitor's name, and the individuals or firms who had purchased the exhibition space and the individual member of plaintiff who had designed the exhibit received credit lines in the program. Plaintiff permitted exhibitors to be present at the exhibits to explain their products and/or distribute promotional literature but prohibited exhibitors from selling or soliciting orders for merchandise.

One of plaintiff's members was employed as a full time coordinator for the 1956 exhibition. While all of the members of plaintiff expended much time and energy in connection with the planning and production of the exhibition, the coordinator was the only member paid by plaintiff for services rendered.

Plaintiff's 1956 exhibition was given primarily to apprise the public of services available from a qualified interior decorator. It also afforded the exhibitors and participants an opportunity to demonstrate their products and/or services to the public, and raised funds necessary to carry on its general purposes.

Profits from the 1956 exhibition were to be used, and were used, to support plaintiff's various programs and to pay general operating expenses. A public relations firm was employed to conduct an advertising campaign following the exhibition and, subsequent to the fiscal periods in issue, plaintiff expended funds to support proposed legislation for licensing interior decorators and paid scholarships to individuals studying interior design and decorating.

Plaintiff's income tax returns for the two fiscal periods in issue reflect the following receipts and disbursements:

|  | Period ended 12-31-55 | Year ended 12-31-56 |
|---|---|---|
| Receipts |  |  |
| 1956 Exhibition | $43,727.50 | $110,389.01 |
| Other receipts | 1,720.56 | 5,568.86 |
| Total receipts | $45,448.06 | $115,957.87 |
| Disbursements |  |  |
| 1956 Exhibition | 4,538.25 | 71,092.92 |
| Other disbursements | 1,465.36 | 26,271.01 |
| Total disbursements | 6,003.61 | 97,363.93 |
|  | 39,444.45 | 18,593.94 |

For 1956 the disbursements not charged against the exhibition included $12,405.02 for publicity and TV shows; $4,613.36 for conference, chapter exhibit and festival expenses; $2,325.09 for telephone listings; $1,745.04 for storage; $1,503.26 for legal and accounting services; $1,309.96 for dinner meetings; and $825.00 for secretarial expenses.

In addition to the production of the 1956 show plaintiff engaged in various other activities pertinent to the specific purpose of its organization, such as the promulgation of ethical principles for the

industry, participation in house tours, conducting competitions for and selection of students eligible for scholarships and administration thereof, production of window displays in prominent department stores, licensing of the industry, and cooperation with a national institute of decorators in preparation for and conduct of a national conference in San Francisco. The most substantial item in terms of money which has been defrayed out of the net proceeds of the exhibitions has been the award of scholarships pursuant to the purpose above stated.

Section 501(c) (6) allows a business league to be tax exempt if it is (1) "not organized for profit and (2) no part of the net earning of which inures to the benefit of any private shareholder or individual"; and Section 39.101(7)–1 of Regulation 118 defines a business league as "an association of persons having a common business interest, the purpose of which is to promote such common interest * * * its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit, even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league * * *."

The Court concludes that plaintiff is and at all said times has been an association of persons having a common business interest and its purpose is and at all said times has been to promote such interest. The specific business in which plaintiff was organized primarily to engage was and at all times herein mentioned plaintiff has engaged in the promotion of educational programs, plans to advance the art of interior design and decoration, and the upholding and practice of a code of ethics of mutual benefit and professional and trade relations. Plaintiff was not organized for profit nor for the purpose of engaging and has not

engaged in any regular business of a kind ordinarily carried on for profit.

Plaintiff's activities are and at all said times have been directed to the improvement of a line of business, to wit: the business of interior decoration, the improvement of the standards of the industry, and the education of the public as to the possibilities of and appreciation of artistic environment, the promotion in institutions of learning of educational interest in interior design and the establishment of scholarships for eligible and competent students in the art of interior design. Said activities were directed toward the accomplishment of the primary purpose for which plaintiff was organized.

The difficult issue in the case at bar involves the statutory prohibition against net earnings of an allegedly exempt business league inuring to the benefit of its members. This prohibition has been interpreted principally through court decisions as it is not covered in the Regulations.

Clearly, net earnings may inure to the benefit of members in other ways than through dividends. Northwestern Municipal Association v. United States (8th Cir. 1938), 99 F.2d 460. And it has been held that where an otherwise exempt organization obtains funds through dealings with non-members at a profit and expends these funds to further its purposes or enlarge its activities, its net earnings inure to the benefit of its members. American Automobile Ass'n v. Comm., 19 T.C. 1146 at 1161 (1953).

Plaintiff, in order to put on its 1956 show, collected approximately $90,000.00 from non-members for rental space for exhibits, $41,000.00 in ticket sales to the public and $10,000.00 in rental fees from its members. The Government argues that net earnings inured to the benefit of its members to the extent that profits from its 1956 show were used to defray the expenses of the show and other activities which, except for such profit, could not have been carried on without increased dues or other payments being

206

required from said members. In support of this argument, the Government relies on the case of Texas Mobil Homes Ass'n, Par. 62,095 P.H.Memo T.C. (1962).

In Texas Mobil Homes the taxpayer was a nonstock membership corporation organized under the laws of Texas. Its stated purposes included promotion of the general welfare of the industry, conduct of public education programs, support of legislative programs to protect the public and its members, sponsoring programs of study and research, and protection of members against unfair trade practices. All of its assets were devoted to these purposes, and no member, officer or director was to receive any profit. On eventual dissolution, its assets were to be distributed to a benevolent, educational or charitable corporation organized not for profit which, in the opinion of its board of directors, would best serve the expressed aims of the association. The Association's activities included the conduct of business meetings, promotion of legislation concerning mobile trailers, participation in civic undertakings together with the Red Cross and Civil Defense authorities, statewide screenings of motion pictures relating to mobile homes, and dissemination of information to members and others interested in mobile home parks. In addition, the Association also conducted mobile home shows at the time, and in conjunction with, its annual conventions. The Tax Court found that the Association's activities (apart from the mobile home shows) in no way parallel those of a regular business and that it was not organized to earn a profit. In so finding, the Court stated:

"Earnings may inure to the benefit of members of an association in a manner other than through the distribution of dividends. Where an organization renders services to its members from which no profit is derived but which are made possible by the earnings of a profit making activity, it cannot be said that none of the net earnings inures to the benefit of members. [Citation omitted]

The income from the mobile home show was derived primarily from nonmembers who paid fees to exhibit and for advertising in the show program, and to some extent from admissions paid by the general public. In each year the profit from the mobile home show was substantial in relationship to petitioner's other income.

Here the deriving of a profit from the mobile home show from charges made to nonmembers was deliberate and was intended to and did defray expenses for petitioner's other activities which except for this profit could not have been carried on without an increase in dues or other payments by members. Under these circumstances some of petitioner's net earnings inured to the benefit of its members. [Citations omitted] In the instant case the profit derived from the show was not incidental to the other purposes of the show but the other purposes of the show were incidental to the purpose of making a profit with which to defray general expenses of petitioner. [Citation omitted]."

While Texas Mobil Homes is very like the case at bar, there are some important differences. In Texas Mobil Homes, the show produced was a yearly event and the Court found that a primary purpose of the show was to raise funds to be able to hire an executive director to enlarge the scope and activities of the organization. The executive director was in 1956 paid $10,000.00 a year and was also provided with a paid secretary. Most important was the finding that in Texas Mobil Homes "the profit derived from the show was not incidental to the other purposes of the show but the other purposes of the show were incidental to the purposes of making a profit with which to defray general expenses of petitioner".

The petitioner at bar, in putting on two shows in six years did not use the income to increase or expand its activities, nor did it hire a paid full time execu-

tive director. While the profit from the show did help defray expenses for petitioner, it cannot be said that this was a primary purpose of the exhibition. The profit derived from the show was incidental to the other legitimate purposes which the organization may participate in and remain tax exempt.

The Government attempts to distinguish the cases allowing a tax exemption [1] by relying upon the fact that whatever earnings were present in those cases came from the members themselves. In Texas Mobil Homes, the court relies on this fact also. It has not been made clear to the court by the government counsel, however, exactly why this fact is important. In the National Leather Case, supra, note 1, the organization, whose members were leather wholesalers, received a substantial part of its advertising money to print a magazine from its associate non-voting members who were leather manufacturers. It is obvious that this cannot be enough to justify tax exemption.

The principal fact to be determined, as was so in National Leather and Mobil Homes, is whether or not the nature of the particular service or profit which inures to the benefit of the members is merely incidental to petitioner's main purpose to promote the welfare and improve the business conditions in the entire industry.[2]

In the case at bar the petitioner has satisfied the requirements of Sec. 501(c) (6) and is entitled to an exemption.

The foregoing shall be considered the fulfillment of Rule 42(a) of the Rules of Civil Procedure, Title 28 U.S.C.A. and be findings of fact and conclusions of law.

JUDGMENT IS HEREBY ENTERED for petitioner in the sum of $18,930.-80.

---

1. National Leather & Shoe Finders Ass'n v. Comm'r, 9 T.C. 121 (1947) ; American Fishermen's Tuna Boat Ass'n v. Rogan, 51 F.Supp. 933 (S.D.Cal.1943); Comm'r v. Chicago Graphic Arts Fed., (7 Cir. 1942) 128 F.2d 424.

2. See Northwestern Municipal Ass'n v. United States (8th Cir. 1938) 99 F.2d 460; Northwestern Jobbers Credit Bureau v. C. I. R. (8th Cir. 1930) 37 F. 2d 880.