**AMERICAN WOODWORKING MACHINERY AND EQUIPMENT SHOW, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. C–29–G–65.**

United States District Court
M. D. North Carolina,
Greensboro Division.

Jan. 20, 1966.

Charles T. Boyd, Greensboro, N. C., for plaintiff.

William H. Murdock, U. S. Atty., Greensboro, N. C., Richard M. Roberts, Acting Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Myron C. Baum, Norman W. Golden, and Peter Winstead, Attys., Dept. of Justice, Washington, D. C., for defendant.

EDWIN M. STANLEY, Chief Judge.

In this civil tax refund suit, the plaintiff seeks to recover the sum of $7,252.10 in income tax and interest paid for the fiscal year ending May 31, 1963, on the ground that plaintiff is entitled to exemptions from Federal income tax under § 501(c)(6) of the Internal Revenue Code of 1954, which grants exemptions to business leagues. The parties concede jurisdiction under 28 U.S.C. § 1346(a)(1). The matter was submitted to the Court for decision on the basis of stipulated facts and briefs.

From the stipulations and exhibits, including depositions and answers to interrogatories, the Court finds the pertinent facts to be as follows:

## FINDINGS OF FACT

1. Plaintiff was incorporated as a nonprofit organization on February 4, 1957, under the laws of the State of North Carolina. Its Certificate of Incorporation provided, in part, that the objects of the corporation were:

> "(a) To promote, organize, advertise, conduct, and operate a woodworking machinery and equipment show and do any and all things necessary in connection with said show.

> "(b) To display, demonstrate, operate and advertise woodworking machinery and equipment and accessories of all kinds and descriptions.

> \* \* \* \* \* \*

> "(k) To provide, furnish, render, or perform services of all kinds and descriptions to and for displayers of machinery and equipment at or in shows operated and conducted by this corporation, including rigging, mechanical, electrical, plumbing, watchmen, janitorial and other services."

2. Except for interim correspondence work between trade shows, the sole activity of the plaintiff has been to promote and operate trade shows for the manufacturers and sellers of woodworking machinery and equipment.

3. From May 13, through May 19, 1958, the plaintiff conducted a woodworking machinery and equipment show in Winston-Salem, North Carolina. It received income from sales or rentals of booths in the amount of $66,582.24. and paid out expenses in conducting the show in the amount of $57,188.92. The net profit (after taxes) was deposited in the plaintiff's account in the Home Federal Savings and Loan Association, Greensboro, North Carolina, where it remained, together with interest earned thereon, until September, 1964, when the funds were transferred into an account under the name of the Woodworking Machinery Manufacturers Association. Between 1958 and 1963, plaintiff conducted no activities other than minimum correspondence in regard to future shows. The net proceeds were intended for use in future machinery and equipment shows.

4. On December 30, 1958, following its 1958 show, plaintiff filed with the District Director of Internal Revenue, at Greensboro, North Carolina, an Exemption Application, Form 1024, seeking exemption from income tax as a "business league" under Section 501(c)(6) of the Internal Revenue Code of 1954. In the application, plaintiff asserted that its purpose was "promotion and development of the manufacturing, selling and use of woodworking machinery and equipment through the medium of conducting trade shows." It was also asserted that "all income is derived from the sale of exhibit space or booths at the trade shows conducted by the Corporation," and that "all funds expended by the Corporation are for operating costs in conducting a trade show once every four or five years."

5. In a letter dated May 27, 1959, the District Director of Internal Revenue notified the plaintiff that its application for exemption had been denied on the grounds that the Corporation was "organized and operated primarily for the purpose of conducting a trade show which constitutes the performance of particular services for individual persons."

6. On April 26, 1962, the plaintiff's Articles of Incorporation were amended. The amendment, in part, eliminated membership requirement in plaintiff corporation, and provided in lieu thereof the following:

"FOURTH: This corporation, not being for profit, shall have no capital stock. The corporation shall be subject to the authority of the Woodworking Machinery Manufacturers Association, a nonprofit association with its principal office and place of business in Philadelphia, Pennsylvania. No part of the net earnings, if any, shall inure to the benefit of any Director of this corporation, to any member of the Woodworking Machinery Manufacturers Association, or to any other individual.

"This corporation shall not have any members. The affairs of the corporation shall be managed by a Board of Directors. The by-laws of this corporation shall contain provision for the method of election of Directors of this corporation, and shall contain all other provisions, matters and things usually and legally contained in corporate by-laws. Said by-laws shall also provide the method by which said by-laws may be amended or repealed.

"In the event of the liquidation of this corporation, the assets thereof, if any, shall become the property of the Woodworking Machinery Manufacturers Association, a nonprofit association."

7. On May 2, 1962, the by-laws of the plaintiff were amended so as to reflect the amendment to its articles of incorporation.

8. The Woodworking Machinery Manufacturers Association, Philadelphia, Pennsylvania, is a nonprofit corporation and has, at all times pertinent, been declared by the Commissioner of Internal Revenue to be exempt from Federal income tax and from the requirement to file income tax returns.

9. The plaintiff conducted a second woodworking machinery and equipment shown May 15 through May 21, 1963, at Greensboro, North Carolina. The operation of the show produced gross income of $118,836.25, and expenditures in the amount of $94,004.76, with net profit (before taxes) in the amount of $24,-831.49. The net profit (after taxes) was deposited in the plaintiff's account in the Gate City Building and Loan Association, Greensboro, North Carolina, where it remained, together with interest earned thereon, until September, 1964, when the funds were transferred into an account under the name of the Woodworking Machinery Manufacturers Association.

10. The 1963 show was financed principally by rental fees charged to manufacturers for booths to exhibit woodworking machinery and equipment. The price of the booths ranged from $300.00 to $855.00, depending on the size of the particular booth. Each exhibitor was also required to contribute $50.00 to defray general advertising costs to promote the show. Advance publicity was largely in the form of advertisements placed in trade journals, or in brochures sent out to prospective exhibitors and users of woodworking machinery and equipment, with respect to the show. Two of such brochures contained the following representation and invitation:

"*Woodworking Machinery Moves Ahead* * * * The greatest woodworking machinery exhibit in history will take place in 1963 in Greensboro, North Carolina. Here is an opportunity to show your products to the largest group of wood-

working machinery buyers ever assembled, to meet them personally and to sell them your equipment.

"*You Are Invited* * * * to join America's leading manufacturers in showing your products to the largest group of woodworking machinery buyers ever assembled, at the great American Woodworking Machinery and Equipment Show of 1963."

11. In excess of 120 companies exhibited their woodworking machinery at the 1963 show. Of the total number of exhibitors, approximately 41 were members of the Woodworking Machinery Manufacturers' Association. Only 13 members of the Woodworking Machinery Manufacturers' Association failed to have an exhibit at the 1963 show, and some of these were represented by parent or subsidiary companies. Nine organizations were provided free exhibit booths, among these being the Greensboro Chamber of Commerce and the North Carolina Department of Conservation. Total revenue from the sale or rental of booths amounted to $108,333.40, and the income from advertising costs charged to exhibitors amounted to $7,300.00. Members of the Woodworking Machinery Manufacturers' Association received a 33⅓ per cent discount on the costs of their booths. A "registration book" maintained at the show indicated the exhibitors present, and their equipment shown or manufactured was available to persons attending. A uniform display sign identifying the particular exhibitor was used at each booth, and promotional literature and sales personnel of the particular exhibitor were present at the booth where machinery was being demonstrated. The exhibitors were free to, and did, engage in sales activities at the show. The show was open to the general public without cost. The total attendance at the 1963 show was approximately 9,804 persons from 44 states and 25 foreign countries. Panel discussions were held each day the show was in progress. The subjects of these panel discussions were: "Yard and Dry Kiln Operations," "Rough Mill Procedures,"

"Sanding Room Techniques," "Finish Machine Operations," "Furniture Material Handling," and "Glue and Veneer Operations." A question and answer period followed each of the panel discussions.

12. Much of the machinery exhibited was relatively large and heavy and could not be easily carried around by a salesman or distributor. A potential buyer of such woodworking machinery, desiring to see it in operation, would usually be taken to a person in the surrounding area currently using the particular machine, or to the manufacturer's factory, for a demonstration. The show provided the manufacturer with an opportunity for the demonstration and advertisement of its woodworking machinery before large numbers of potential buyers.

13. On or about August 1, 1963, the plaintiff again sought exemption from income tax as a "business league" under § 501(c) (6) of the Internal Revenue Code of 1954. In a verified statement attached to the application, William M. York, Secretary-Treasurer of the plaintiff corporation, stated: "The corporation was organized solely for the purpose of putting on the said woodworking machinery and equipment show," and that the corporation believed the amendments to its Articles of Incorporation made on April 26, 1962, and to its By-Laws on May 2, 1962, entitled it to exemption.

14. In a letter dated October 9, 1964, the District Director of Internal Revenue notified the plaintiff that its application for exemption from income tax had been considered by the National Office of the Internal Revenue Service, and that it was concluded the plaintiff was not entitled to exemption.

15. On August 1, 1963, the plaintiff filed its income tax return for the fiscal year ending May 31, 1963, showing a taxable income of $23,341.60, and an income tax liability of $7,002.48. No tax was paid with the return, but same was accompanied by another application for exemption from income tax as a "business league" under § 501(c) (6) of the Internal Revenue Code of 1954.

16. On or about March 19, 1964, plaintiff paid to the District Director of Internal Revenue, at Greensboro, North Carolina, a total of $7,151.74 covering the asserted tax of $7,002.48, plus $149.26 in interest to December 31, 1963. On March 23, 1964, the plaintiff paid additional interest of $100.36 to March 19, 1964, making total payments of $7,252.10.

17. On June 30, 1964, the plaintiff timely filed a claim for refund in the amount of $7,252.10, representing income tax and interest paid for the fiscal year ending May 31, 1963. A formal notice of disallowance of the claim was mailed on January 20, 1965.

18. This litigation seeks only a refund of the income tax and interest paid for the fiscal year ending May 31, 1963. While the plaintiff corporation paid income tax with respect to its 1958 net income, no application for refund was filed and no recovery suit was brought.

## DISCUSSION

1. The parties are in agreement that the sole issue presented by this litigation is whether the plaintiff qualified for its taxable year ending May 31, 1963, as a business league, and thus an organization exempt from income taxes under § 501(c) (6) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 501(c) (6).[1]

The term "business league" is defined in a treasury regulation [2] which has remained unchanged through repeated statutory re-enactments since 1929, and must now be treated as having the force of law. Evanston-North Shore Board of Realtors v. United States, Ct.Cl., 320 F.2d 375 (1963), cert. den. 376 U.S. 931, 84 S.Ct. 700, 11 L.Ed.2d 650 (1964). It is stated in United States v. Oklahoma City Retailers Association, 10 Cir., 331 F.2d 328 (1964), that in order to qualify as a tax exempt business league under the statute and regulation, the organization claiming the exemption must meet the following conditions:

"(1) It must be a business league; (2) it must not be organized for profit; (3) it must be an organization no part of the net earnings of which inures to the benefit of any private shareholder or individual; (4) it must be an association of persons, incorporated or unincorporat-

---

1. This section provides, in pertinent parts, as follows:

§ 501. Exemption from tax on corporations, certain trusts, etc.

(a) *Exemption from taxation.*—An organization described in subsection (c) or (d) or section 401(a) shall be exempt from taxation under this subtitle unless such exemption is denied under section 502, 503, or 504.

\*　　\*　　\*　　\*　　\*

(c) *List of exempt organizations.*—The following organizations are referred to in subsection (a):

(6) Business leagues, chambers of commerce, real-estate boards, or boards of trade, not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.

2. Treasury Regulation § 1.501(c) (6)–1 provides:

"A business league is an association of persons having some common business interest, the purpose of which is to promote such common interest and not to engage in a regular business of a kind ordinarily carried on for profit. It is an organization of the same general class as a chamber of commerce or board of trade. Thus, its activities should be directed to the improvement of business conditions of one or more lines of business as distinguished from the performance of particular services for individual persons. An organization whose purpose is to engage in a regular business of a kind ordinarily carried on for profit, even though the business is conducted on a cooperative basis or produces only sufficient income to be self-sustaining, is not a business league. An association engaged in furnishing information to prospective investors, to enable them to make sound investments, is not a business league, since its activities do not further any common business interest, even though all of its income is devoted to the purpose stated. A stock or commodity exchange is not a business league, a chamber of commerce, or a board of trade within the meaning of section 501 (c) (6) and is not exempt from tax. Organizations otherwise exempt from tax under this section are taxable upon their unrelated business taxable income."

ed, having common business interests the purpose of which is to promote those common interests; (5) its activities must be directed at improving the business conditions of one or more lines of business and not particular services for individual persons, and (6) it may not engage in a business ordinarily carried on by businesses for profit. If any of these conditions are not met, the exemption is not applicable."

There can be no question that plaintiff was organized as a nonprofit corporation. Its purpose is to promote, organize, advertise, conduct and operate woodworking machinery and equipment shows. It has neither capital stock nor members. It is subject to the authority of the Woodworking Machinery Manufacturers Association, a nonprofit corporation that has been declared by the Commissioner of Internal Revenue to be a business league under the statute, and thus exempt from Federal income tax and from the requirement to file income tax returns. No part of the net earnings of the plaintiff can inure to the benefit of any director of the corporation, to any member of the Woodworking Machinery Manufacturers Association, or to any other individual. In the event of the liquidation of the plaintiff corporation, its assets become the property of the Woodworking Machinery Manufacturers Association. Under these circumstances, the plaintiff clearly qualifies as a business league under the statute and regulation, unless its activities inure to the benefit of its participating members in a way other than through dividends.

It is the contention of the Government that the plaintiff's trade show activities render only insignificant benefit to the industry as a whole, and are primarily designed to render particular service to exhibitors by affording them an opportunty to engage in commercial sales activities. In making this contention, however, the Government specifically disclaims any suggestion that the net profits from the 1963 show were in any way distributed, or inured to any private stockholder, exhibitor or individual. The plaintiff, on the other hand, urges that its principal purpose is to improve and aid the woodworking machinery industry through the organization and operation of trade shows, and that any benefits inuring to its exhibitors are merely incidental to its main purpose.

[2–4] While it is generally held that net earnings may inure to the benefit of an organization in ways other than through dividends (American Institute of Interior Designers v. United States, 208 F.Supp. 201 (D.C.N.D.Cal.1962)), it is also recognized that an otherwise exempt organization may engage in profit-making activities, or supply minor services to individuals, without losing its exemption where such profit-making activities or services are incidental to its primary exempt activities or services. Trinidad v. Sagrada Orden, etc., 263 U.S. 578, 44 S.Ct. 204, 68 L.Ed. 458 (1924). Consequently, the crucial question for determination is the main primary purpose for which the 1963 trade show was organized and conducted. If it was to promote the welfare and improve the business conditions of the entire woodworking machinery industry, and any services or profit inuring to the benefit of exhibitors were merely incidental to the main purpose, it necessarily follows that the plaintiff is a business league within the meaning of the statute and is entitled to its claimed exemption. Conversely, if the trade show activities rendered only insignificant benefit to the industry as a whole, and were primarily designed to render valuable services to individual exhibitors by affording them an economical means to sell their machinery, the exemption should be denied. In urging that the trade show was primarily designed to afford valuable benefits to the individual exhibitors, as contrasted to the woodworking machinery industry as a whole, the Government emphasizes that the exhibitors at the show were invited to demonstrate and sell their equipment to the largest group of woodworking machinery buyers ever assembled, and that the exhibitors were per-

mitted to, and did, freely engage in selling activities at their respective booths. It is further pointed out that most of the machinery which was exhibited was incapable of being transported to show to individual buyers, and that the trade show, as advertised, enabled the exhibitors to meet and solicit a large number of potential buyers of woodworking machinery under one roof. Since the trade show was designed and operated primarily to afford exhibitors an opportunity to engage in commercial selling activities, and as an economy and convenience to individual exhibitors in the operation of their respective businesses, and since the trade show activity of the plaintiff rendered only incidental benefits to the whole industry, the Government argues that the plaintiff should be denied a business league exemption. The plaintiff counters with the argument that while the exhibitors were free to, and did, engage in sales activities, there has been no showing that any machinery was actually sold by any exhibitor at the 1963 show. In any event, the defendant maintains that any profits or other benefits realized from sales made at, or as a result of, the show were only minimum when compared to the main purpose of the plaintiff to improve and aid the woodworking machinery industry.

The Court is of the opinion that this case is ruled by Texas Mobile Home Association v. C. I. R., 5 Cir., 324 F.2d 691 (1963), and American Institute of Interior Designers v. United States, 208 F.Supp. 201 (D.C.N.D.Cal.1962), and that the cases relied upon by the defendant are factually distinguishable. Actually, the facts in Texas Mobile Home Association and American Institute of Interior Designers are more favorable to the Government than the facts in this case.

Finding that the record as a whole clearly establishes plaintiff's primary purpose and activity is to improve and aid the woodworking machinery industry, and that any earnings or benefits inuring to exhibitors at its trade shows are minimum and incidental to its primary purpose, it follows that the plaintiff has satisfied the requirements of Section 501(c) (6) and is entitled to an exemption.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and of the subject matter.

2. The plaintiff corporation is exempt from Federal income tax under 26 U.S. C.A. § 501(c) (6).

3. The plaintiff is entitled to recover of the defendant the sum of $7,252.10.

A judgment will be entered accordingly.